# UNITED STATES DISTRICT COURT
for the
Western District of North Carolina

FILED
ASHEVILLE, N.C.
SEP 1 3 2016
U.S. DISTRICT COURT
W. DIST. OF N.C.

| | |
|---|---|
| United States of America<br>v.<br><br>SETH WILLIS PICKERING<br>*Defendant(s)* | )<br>)<br>) Case No. 1:16mj100<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 9, 2016__ in the county of __Buncombe__ in the __Western__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC, Section 1111(a) and (b) | Murder within the special maritime and territorial jurisdiction of the United States |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent James A. Anderson
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/13/2016

_____
*Judge's signature*

City and state: Asheville, North Carolina

Dennis L. Howell, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, James A. Anderson, being duly sworn, do hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since July 20, 1997. I am currently assigned to the Asheville Resident Agency of the Charlotte field office.

2. As a Special Agent, I am a law enforcement officer of the United States as defined by Section 2510(7) of Title 18, United States Code (U.S.C.), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Section 2516 of Title 18, U.S.C. As a Special Agent, I have conducted and participated in a variety of criminal and national security investigations, including investigations associated with counterterrorism, foreign counterintelligence, murder, gang violence, bank robberies, fugitives, financial crimes, computer crimes, as well as other violent criminal acts.

3. This Affidavit is being submitted in support of a criminal complaint and an arrest warrant for **SETH WILLIS PICKERING**, date of birth March 21, 1980, hereafter referred to as **PICKERING**, for the violation of Title 18, U.S.C., Section 1111(a) and (b), i.e., "murder within the special maritime and territorial jurisdiction of the United States."

4. I am aware of information contained in this Affidavit through direct participation in this investigation and information provided to me by other law enforcement officers and

witnesses. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to support the issuance of a criminal complaint and an arrest warrant for **PICKERING**.

## FACTS SUPPORTING PROBABLE CAUSE

5. Around 6:00 PM on September 9, 2016, Buncombe County Sheriff's Office (BCSO) investigators were working on a "missing juvenile" report at a residence in Asheville, North Carolina involving six-year old Lila Pickering, hereafter referred to as Lila. The individual who initiated the report was temporary custodian with whom Lila was placed by the Buncombe County Department of Health and Human Services (DHHS). The custodian advised that approximately four weeks ago, Lila was temporarily placed in her care by DHHS.

6. The custodian told responding BCSO officers that Lila's father is **SETH WILLIS PICKERING** and he was only supposed to have supervised visitation with Lila. The custodian reported that at approximately 5:20 PM that day, **PICKERING** arrived at the residence to visit Lila for one such supervised visit. However, during the visit, **PICKERING** took Lila and departed without the custodian's permission. According to the custodian, as **PICKERING** was placing Lila in his vehicle, the custodian told him, "Seth, please don't do this, they will put you in jail." The custodian said "he [**PICKERING**] just shook his head and got in [the vehicle] and drove off." Responding officers began gathering information necessary to initiate a report and alert local law enforcement agencies concerning the missing juvenile.

7. Meanwhile, also on the afternoon of September 9, 2016, National Park Service law enforcement Park Rangers Brian Ruh and Cody Marsh were on routine patrol on the Blue

Ridge Parkway in Buncombe County, in the Western District of North Carolina. At that time, Rangers Ruh and Marsh had no information regarding Lila's removal from the DHHS placement. At approximately 5:57 PM, they (Rangers Ruh and Marsh) observed a Dodge Avenger sedan parked along the shoulder of the Blue Ridge Parkway near mile marker 393. The Dodge Avenger was gold/beige in color, bearing NC license plate PAJ-1294. A registration check revealed that the Avenger was registered to **PICKERING**, as identified above and that the vehicle registration had recently expired.

8. The Rangers further observed a male subject (later determined to be **PICKERING**, as identified above) and a juvenile female (later determined to be Lila Pickering, **PICKERING's** daughter) walking down a steep embankment on the shoulder of the Parkway. **PICKERING** was carrying a large cooler and had a backpack or plastic bags on his back. Knowing that there were no trails, picnic areas, or legal camp sites in the area, the Rangers decided to investigate. The Rangers parked their vehicle and began watching the subjects from the roadway. They observed **PICKERING** as he cut some underbrush and built a small fire. At approximately 6:50 PM, the Rangers began approaching **PICKERING** and Lila, with Ranger Marsh walking down the embankment and Ranger Ruh approaching from the northeast through the wood-line. At this point, the Rangers had no information regarding the ongoing missing juvenile investigation, and they were acting to investigate the illegal campsite, illegal campfire, and other suspected violations. As Ranger Marsh approached, he (Ranger Marsh) overheard **PICKERING** say to Lila, but in a very loud tone that seemed to be intended for the Rangers to overhear, words to the effect of "Don't worry honey, we will when the cops leave" which alerted the Rangers that they had been noticed by **PICKERING**.

9. When Ranger Marsh got within 20-25 feet of the subjects, Ranger Marsh made eye-contact with **PICKERING** and then announced out-loud, "Police!" As he approached more closely, Ranger Marsh stated out-loud, "Officer Marsh with the National Park Service...how's it going tonight?" As the Rangers continued to approach, **PICKERING** was facing Ranger Marsh with his (**PICKERING's**) hands at his sides. Ranger Marsh did not see anything in **PICKERING's** hands. **PICKERING** stated something to the effect of, "It's going fine, nothing going on." Without warning, Ranger Marsh observed **PICKERING** turn away from the Rangers and make a lunging movement toward Lila who was standing a few feet behind him (**PICKERING**). Ranger Marsh heard an audible "thud-like" noise and a brief high-pitched wince or grunt sound coming from Lila, who then fell to the ground. **PICKERING** then turned back toward Ranger Marsh and raised his hands in the air. Ranger Marsh shouted at **PICKERING**, "DID YOU JUST STAB HER?" Ranger Marsh could not recall if **PICKERING** responded to that question. The Rangers drew their service weapons and observed Lila lying on the ground with a knife protruding from her chest. Ranger Marsh then secured and handcuffed **PICKERING**. Ranger Ruh began to administer medical attention to Lila, but his efforts to save her were unsuccessful. Emergency medical services personnel also arrived but they were not able to resuscitate Lila and she died at the scene.

10. While still on the scene, Ranger Marsh read **PICKERING** his "Miranda Rights" directly from his Miranda card. Ranger Marsh asked **PICKERING** if he wanted to answer questions, to which **PICKERING** responded, "Yes." Ranger Marsh asked **PICKERING** why he had just killed his daughter. **PICKERING** replied, "Now they will never be able to take her away from me." **PICKERING** further stated something to the effect of, "She's happier now...it's what she wanted."

11. Soon thereafter, **PICKERING** was transported to the BCSO where he was interviewed by Affiant and BCSO Detective Walt Thrower. The interview was audio and video recorded. Prior to beginning questioning, **PICKERING** was again advised of his Miranda rights and he signed a written rights waiver. During the interview, **PICKERING** stated that approximately three weeks ago, **PICKERING** moved to 14-A Emily Rose Lane, Leicester, North Carolina. Detective Thrower asked PICKERING to tell him what happened earlier that evening. **PICKERING** said that at approximately 6:15 PM that evening (September 9, 2016) **PICKERING** drove his Dodge Avenger up on the Parkway with his daughter to go camping. **PICKERING** stated that he was setting up a campsite and heard Park Rangers identify themselves and he observed them approaching. At that point in the interview, Detective Thrower asked **PICKERING** to describe what happened. Among other statements, **PICKERING** advised that, "Ten minutes before he got there, my daughter made me promise that they would never take her away from me again. I reacted the only way I knew that she could go to sleep without having to cry daddy I want to come home." **PICKERING** further stated, "I knew as soon as they showed up, they would take her away from me and never let me see her again." **PICKERING** further stated, "There's something worse than death…the state of living…[unintelligible]…where you wake-up every day."

12. On September 10, 2016, BCSO investigators executed a state search warrant of **PICKERING's** residence at 14-A Emily Rose Lane, Leicester, North Carolina, 28748. The residence appeared to have been lived in recently by **PICKERING**. Among other items, investigators found two kitchen knife blocks on the kitchen counter. Each block of knives contained one empty slot indicating there to be one knife missing from each block. One knife set

consisted of various knives with a silver/metallic handle and a black oval-shaped decorative peg near where the handle joined the knife blade.

13. On September 12, 2016, an autopsy was performed on the victim's body. The medical examiner concluded that Lila Pickering's cause of death was a stab wound to her heart. A knife with a silver/metallic handle and a black oval-shaped decorative peg near where the handle joined the knife blade was recovered from her body. This knife exactly matched one of the knife sets found in **PICKERING's** residence from which investigators had noticed one or two knives was missing from the set.

14. An analysis of the murder scene and a review of the Parkway boundary lines confirmed that the murder occurred within the boundaries of the Blue Ridge Parkway, in Buncombe County, within the Western District of North Carolina.

## CONCLUSION

15. Based on my previous investigative experience and the above information, I submit there is probable cause that on September 9, 2016, **SETH WILLIS PICKERING** violated Title 18, U.S.C., Section 1111(a) and (b), i.e., murder within the special maritime and territorial jurisdiction of the United States.

FURTHER AFFIANT SAYETH NOT

*[signature]*

James A. Anderson
Special Agent
Federal Bureau of Investigation

REVIEWED BY ASSISTANT UNITED STATES ATTORNEY DAVID A. THORNELOE

SUBSCRIBED and SWORN before me on September 13, 2016.

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge
Western District of North Carolina